SULLIVAN *v.* TIMES PUBLISHING COMPANY.

Opinion delivered February 17, 1930.

A. F. *Barham, Gladish & Taylor* and *Caraway, Baker & Gautney,* for appellant.

*G. B. Segraves, James G. Coston* and *J. T. Coston,* for appellee.

McHANEY, J.   In 1906 Leon Roussan died testate in Mississippi County, Arkansas.  His will provided that all his property described therein, including lots 5 and 6, townsite addition to Osceola, the property in controversy in this litigation, should be the property of his wife, Adah L. Roussan, and continued:   "To have and to hold, use, after she had paid off all indebtedness as may remain due at my demise, and which now consists of a mortgage held by the American Building & Loan Association of Little Rock, Arkansas, and a mortgage held by the Ladies Aid Society for $200, and other debts amounting to about $300 more.

"In liquidating these claims she may sell any part of the property she may deem best or more advantageous, the remainder to be used by her for her sole use and benefit for support.  After her death the real estate is to go to my sister, Clara, for her sole use and benefit, and at her death the property will revert to my lawful heirs.  No

bond or other legal process shall be required of my wife nor my sister before taking immediate and full and undisputed possession.''

This will was admitted to probate, and Mrs. Roussan qualified as executrix thereof. After administering the estate for some time, she filed a report in which she claimed that the estate was indebted to her in the sum of $2,542.23. No objection or exceptions having been filed as to the report, which remained on file for three months, the probate court entered an order approving the report, and finding that the estate was indebted to her in said sum. No appeal was taken from this order. In 1913 she filed a petition to sell the property in controversy to pay the debts of the estate which the court approved, and ordered the property sold for this purpose. She thereupon advertised the property for sale, but there were no bidders, and no sale was had. She then resigned as executrix, and C. C. Ermen, who was appointed to succeed her, filed a like petition to sell the property to pay debts, and another order was made to sell said lots 5 and 6. He caused an appraisement to be made, the sale advertised, and at this sale Mrs. Roussan bid $2,500 for lot 5, and $500 for lot 6, which was more than two-thirds of the appraised value of said lots, and the property was struck off to her, there being no other bidders. This sale was reported to, approved and confirmed by the probate court on April 12, 1915, and deed was executed to her. No objections or exceptions were filed in the probate court to any of the proceedings therein, and no appeal was taken from any of the orders of the court, but thereafter Mrs. Roussan held, occupied and used the property as her own, mortgaged it, and on September 5, 1924, conveyed it to the appellee, the Times Publishing Company. Thereafter in January, 1927, Mrs. Roussan died, and in September following appellants who are the collateral heirs of said Leon Roussan, brought this action against the appellees in which they alleged their relationship to the testator, that they are

his sole surviving heirs, that Mrs. Roussan by the terms of said will acquired only a life estate in the property, and that the Times Publishing Company by its deed acquired no greater title than was devised to her under said will; that, by the sale of other property belonging to the estate, Mrs. Roussan obtained sufficient money to pay the debts owing by the testator at the time of his death, and that all the debts had been paid by her prior to her conveyance of the property involved in this litigation to the Times Publishing Company. Issue was joined on these allegations, and at the conclusion of the testimony on a trial of the case the court instructed a verdict for the appellees on the ground that the orders and judgments of the probate court were valid on their face and were not open to collateral attack in that court, and that all the evidence offered constituted a collateral attack on such judgments and orders and was therefore incompetent.

We think the court was correct in so holding. Whether the will created in Mrs. Roussan only a life estate with remainder to the collateral heirs, and whether her deed destroyed the estate in remainder or defeated it as to said lots 5 and 6, we do not find it necessary to decide in this case.

On the application for the second sale, the probate court made an order finding "that the said estate is indebted to Mrs. Leon Roussan in the sum of $2,795.48, and to Lamb & Rhodes in the sum of $100." The court made other substantial findings of fact in connection with its order to sell, showing that the statute governing the sale of real estate to pay the debts of the estate were substantially complied with. The court thereupon entered a judgment directing the sale of said property in accordance with the statute, and the sale was made, reported, approved and confirmed. It is said that Mrs. Roussan made no report for more than six years, and that there was no claim allowed against the estate until December, 1912, and that the report she made shows that the claims which she paid were barred by limitation, and that they

30

were not presented to and allowed by the probate court prior to 1912. Conceding this to be so, the action of the court in allowing Mrs. Roussan's claim for the amount of debts she had paid was an order from which an appeal should have been taken by any person interested. This was not done, but about fifteen years later this collateral attack is made. The probate court is a court of superior jurisdiction, and, when acting within its jurisdictional rights, its judgments import absolute verity and are not open to collateral attack. *Graham* v. *Graham,* 175 Ark. 530, 1 S. W. (2d) 16; *Day* v. *Johnston,* 158 Ark. 478, 250 S. W. 532.

The probate court had jurisdiction to order a sale of the real estate to pay debts. This jurisdiction is specifically given it by statute. In *Stumpff* v. *Louann Provision Co.,* 173 Ark. 193, 292 S. W. 106, this court held that "the county court is a court of superior jurisdiction, and its judgments, rendered in pursuance of jurisdiction rightfully acquired, cannot be attacked collaterally." We there quoted from *Crittenden Lumber Co.* v. *McDougal,* 101 Ark. 390, 142 S. W. 836, as follows: "It is well settled in this State that, in a collateral attack upon a judgment of a court of general jurisdiction, every presumption will be indulged in favor of the jurisdiction of the court, and the validity of the judgment or decree."

We therefore hold that appellants are precluded from maintaining this action, and that the instructed verdict was properly given by the court. Judgment affirmed.